**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| Mustafa Hussein, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No.   4:14-cv-1410-JAR |
| | ) |
| County of Saint Louis, Missouri, et al, | ) |
| | ) |
| Defendants. | ) |

**Memorandum in Support of Temporary Restraining Order**

**I.     Introduction**

On August 9, 2014, a police officer of the City of Ferguson's police department shot and killed Michael Brown, who was unarmed. Many members of the community have responded with anger at the police. As a result, there have been frequent demonstrations on the public streets and sidewalks of Ferguson.

At these demonstrations, protestors are voicing their opinions about such issues of public concern as the relationship between police and the community; the frequency with which police officers shoot unarmed black men; and the militarization of local police forces.

Defendants' response to the demonstrations has been controversial, including using force, ordering peaceful protestors to disband and evacuate the streets and sidewalks, and ordering protestors and observers to stop documenting and videotaping the demonstrations. There is widespread interest in Defendants' tactics, which raise questions about whether a military response to the protest is consistent with the values of the United States.

In order to document what is occurring on the streets and sidewalks of Ferguson, Plaintiff went to Ferguson on Wednesday, August 13, 2014, to document and record what he could see

and hear and to share it with the world. Over a speaker, police officials implementing Defendants' policy ordered everyone on the street to stop recording. Upon hearing the order, Plaintiff was required to choose between surrendering his First Amendment right to record the action unfolding on the street before him or risking arrest or serious bodily injury inflicted by law enforcement officials if he continued recording and exercising his First Amendment rights.

Plaintiff chose to continue recording, putting his liberty and physical safety at serious risk. Plaintiff is aware that, in recent days, other journalists have been arrested while engaging in no unlawful activity, have been fired upon by police with teargas, and their recording equipment has been taken by police. Plaintiff is aware that, in recent days in Ferguson, other members of the public and media have been ordered by law enforcement officials to stop recording.

Plaintiff would like to peacefully observe and record the interactions between the community and law enforcement officials in the future; however, to do so he must risk the infliction of serious physical harm and the loss of his property by law enforcement or arrest.

## II.     Argument

### A.     Standard for Temporary Restraining Order.

In considering whether to issue a preliminary injunction, this Court must determine: (a) whether the plaintiff is likely to prevail on the merits, (b) if there exists a threat of irreparable harm to the plaintiffs absent the injunction, (c) the balance between this harm and the injury that the injunction's issuance would inflict upon defendant, and (d) what is in the public interest. *See Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981); *accord Lane v. Lombardi*, 2:12-CV-4219-NKL, 2012 WL 5873577, *1 (W.D. Mo. Nov. 15, 2012). The standard for a temporary restraining order is the same as the standard for a preliminary injunction. *See Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367 (8th Cir. 1991).

### B.     First Amendment Implications

This case implicates both the Free Speech and the Free Press Clauses of the First Amendment. Each is applicable to the states through the Fourteenth Amendment. *See Near v. State of Minnesota ex rel. Olson*, 283 U.S. 697, 707, 51 S. Ct. 625, 628, 75 L. Ed. 1357 (1931) ("It is no longer open to doubt that the liberty of the press and of speech is within the liberty safeguarded by the due process clause of the Fourteenth Amendment from invasion by state action.").

The burden is on Defendants to demonstrate that ordering Plaintiff and other members of the public to stop recording on the streets and sidewalks of Ferguson is constitutional. This case involves a policy, not a statute. But even where a statute that allegedly regulates the exercise of First Amendment rights, the burden is on the statute's proponent to establish the statute's constitutionality. *Phelps-Roper v. Koster*, 713 F.3d 942, 949 (8th Cir. 2013).

Finally, the fact that the challenged practice restricts First Amendment activity means that consideration of the likelihood of success on the merits is decisive to the question of whether an injunction should issue. "In a First Amendment case, ... the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should issue." *Phelps–Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps–Roper v. City of Manchester, Mo.*, 697 F.3d 678 (8th Cir. 2012). "When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc) (quoting *Phelps–Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir. 2011) (per curiam) (quotation omitted).

### C.	Likelihood of Success on the Merits

Plaintiff is likely to succeed on the merits.[1]

A policy that allows armed police officers to demand that members of the media or public stop recording on the streets and sidewalks of Ferguson is a prior restraint on speech. "A prior restraint exists when the enjoyment of protected expression is contingent upon the approval of government officials." *Dream Palace v. Cnty. of Maricopa*, 384 F.3d 990, 1001 (9th Cir. 2004) (citing *Near v. Minnesota,* 283 U.S. 697, 711–13 (1931)). Here, Defendants ordered Plaintiff to stop his lawful First Amendment activity. A direct order from a police officer acts as a prior restraint because persons of ordinary firmness does not feel at liberty to ignore it. The burden of proving a prior restraint is permissible is especially steep. The Supreme Court has repeatedly held that "[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).

Furthermore, Plaintiff is likely to success on his claim that he has the right to photograph and record the police and protestors in public spaces. *See Am. Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) *cert. denied*, 133 S. Ct. 651 (2012) ("The act of *making* an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording.").

---

[1]	Because Plaintiff challenges a policy, not a statute or ordinance, he demonstrates likelihood of success if the can show "fair chance of prevailing." *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) ("[C]ourts should… apply the familiar 'fair chance of prevailing' test where a preliminary injunction is sought to enjoin something other than government action based on presumptively reasoned democratic processes.").

Plaintiff is especially like to success because his First Amendment right to record is at its zenith on public streets and sidewalks. "Consistent with the traditionally open character of public streets and sidewalks, [the Supreme Court] ha[s] held that the government's ability to restrict speech in such locations is 'very limited.'" *McCullen v. Coakley*, 134 S. Ct. 2518, 2529 (2014). The government is "sharply circumscribed" in its authority to restrain expressive activity in "places which by long tradition or by government fiat have been devoted to assembly and debate." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Public places, such as streets and sidewalks, that are associated with the free exercise of expressive activities "are considered, without more, to be 'public forums.'" *Grace,* 461 U.S. at 177; *see also Snyder*, 131 S.Ct. 1207 at 1218 (quoting *Frisby v. Schultz,* 487 U.S. 474, 480 (1988)) (observing that the Supreme Court has "'repeatedly referred to public streets as the archetype of a traditional public forum'"); *Pleasant Grove City, Utah v. Summum,* 555 U.S. 460, 469 (2009) (noting "government entities are strictly limited in their ability to regulate private speech" in " 'traditional public fora' " such as public streets and parks) (citation omitted); *Frisby*, 487 U.S.  at 481 (finding that courts need not make any "particularized inquiry into the precise nature of a specific street" because "all public streets are held in the public trust and are properly considered traditional public fora").

Finally, Plaintiff is likely to succeed on this claim for the reasons discussed by the United States Department of Justice Civil Rights Division in its May 14, 2012, letter to the Baltimore Police Department. A copy of the letter is attached hereto and incorporated herein by reference.

### D. Remaining Dataphase Factors

When a plaintiff has shown a likely violation of his First Amendment rights, the other preliminary injunction requirements are generally deemed to have been satisfied. *Swanson*, 692

F.3d at 870; *accord Phelps-Roper v. Cnty. of St. Charles, Mo.*, 780 F. Supp. 2d 898, 900-01 (E.D. Mo. 2011). There is no basis for departing from the general rule here.

A restriction of protected expressive activity constitutes irreparable harm. It is well-settled that a "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality). Plaintiff is placed in a position of choosing between exercising his First Amendment rights or disobeying direct orders to stop recording and, thereby risk arrest or serious bodily injury. This is not a choice that Defendant may impose upon members of the public without running afoul of the First Amendment.

"The balance of equities… generally favors the constitutionally-protected freedom of expression." *Nixon*, 545 F.3d at 690. There is no harm to any Defendants if activity, including the actions of police officers, is recorded on public streets and sidewalks. To the contrary, so long as law enforcement officials act in a lawful and professional manner, it is to Defendants' benefit that the right not to record is not abridged.

"It is always in the public interest to protect constitutional rights." *Id.* at 689. The public interest is served by allowing wide-access to information about what is occurring on the streets and sidewalks of Ferguson. This is an important moment for Ferguson and our Nation—allowing documentation of what occurs is in the public interest.

* * *

For the foregoing reasons, a TRO should be entered. Another reason for entering a TRO is the absence of any explanation for why Plaintiff or other members of the media or public should be prohibited from recording on streets and sidewalks. Any concern about hypothetical situations that might occur—and Plaintiff is not aware of any even hypothetical justifications for

ordering recording to cease—can be addressed by requiring Defendants to notify this Court in writing within twenty-four hours of any occasion when they determine that exigent circumstances make compliance with the TRO impossible.

## III.   Conclusion

For the forgoing reasons, this Court should enter a temporary restraining order.

                Respectfully submitted,

/s/ Anthony E. Rothert
ANTHONY E. ROTHERT, #44827MO
GRANT R. DOTY, #60788MO
AMERICAN CIVIL LIBERTIES UNION
    OF MISSOURI FOUNDATION
454 Whittier Street
St. Louis, Missouri 63108
Telephone: (314) 652-3114
Facsimile: (314) 652-3112

GILLIAN R. WILCOX, #61278MO
AMERICAN CIVIL LIBERTIES UNION
    OF MISSOURI FOUNDATION
3601 Main Street
Kansas City, Missouri 64111
Telephone: (816) 470-9938
Facsimile: (314) 652-3112

**ATTORNEYS FOR PLAINTIFF**

Certificate of Service

I certify that a copy of the foregoing was served upon defendant by placing the same in the First Class mail addressed as set forth below and by facsimile or emails as set forth below on August 15, 2014:

>RONALD REPLOGLE
>c/o James Layton
>Solicitor General
>PO Box 899
>Jefferson City, Missouri 65102
>Fax: 573-751-0774
>
>City of Ferguson, Missouri
>c/o Megan Asikainen
>City Clerk
>110 Church Street
>Ferguson, Missouri 63135
>Fax: 314-524-5173
>
>County of Saint Louis, Missouri
>c/o Patricia Redington
>County Counselor
>41 South Central Avenue
>St. Louis, MO 63105
>Fax: 314-615-3732

/s/ Anthony E. Rothert